**Dated: April 17, 2020**

**The following is ORDERED:**



Janice D. Loyd
U.S. Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re: ) | |
| ) | |
| Brent Barnes Hickman, ) | Case No. 18-13706-JDL |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| The Shack, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adv. No. 19-1042-JDL |
| ) | |
| Brent Barnes Hickman, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| R&D "2" Investment Group, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adv. No. 19-1043-JDL |
| Brent Barnes Hickman, ) | (Jointly Administered) |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT**

## I. Introduction

*"Honesty may not always pay, but lying always costs."*[1]

A discharge of indebtedness in bankruptcy is reserved for the "honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695 (1934); *In re Snyder*, 509 B.R. 945, 951 (Bankr. D. N.M. 2014). One of the debtor's duties in any bankruptcy case is to fully disclose his or her assets and liabilities. The Plaintiffs contend Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4)(A)[2] because he knowingly and fraudulently made a false oath or account in disclosing assets and transactions in his Schedules and Statement of Financial Affairs. This matter is before the Court for resolution on *Plaintiffs' Motion for Summary Judgment* (the "Motion") [Doc. 18] and the *Defendant's Response to Plaintiffs' Motion for Summary Judgment* (the "Response") [Doc. 19].[3] The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.[4]

---

[1] Judge Terrence Michael in *In re Fletcher*, 2015 WL 1239811 (Bankr. N.D. Okla. 2015) (quoting Michael Josephson, *Importance of Trust and the Insidiousness of Lying in Business and Life*, Business Ethics & Leadership by Michael Josephson (Dec. 3, 2014), http://josephsoninstitute.org/business/blog/2014/12/importance-of-trust-and-the-insidiousness-of-lying-in-business-and-life/).

[2] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code. 11 U.S.C. § 101 et seq.

[3] References to Docket Entries in this Order refer to the docket in Adv. No. 19-1042, which is jointly administered with Adv. No. 19-1043, pursuant to *Order For Joint Administration* [Doc.10], unless otherwise noted.

[4] All future references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), and 157(a) and the Order of Reference of the United States District Court for the Western District of Oklahoma as Local Rule LCvR 81.4(a). This matter seeking a determination of an objection to discharge is a core proceeding under 28 U.S.C. § 157(b)(2)(J) over which this Court has authority to enter a final order. Furthermore, Plaintiffs and the Debtor/Defendant have consented to the jurisdiction of this Court and its ability to enter a final order pursuant to Rules 7008 and 7012 [Doc. 1, ¶ 5; Doc. 6, ¶ 2]. Venue is proper pursuant to 28 U.S.C. § 1409(a).

## III. Findings of Fact

The determination of whether a motion for summary judgment is to be granted is based upon whether there are any material issues of fact which are undisputed and entitles the moving party to judgment as a matter of law. The Court finds the following material facts to be undisputed:

1. Brent Hickman ("Hickman") operates the restaurant HLMR, LLC d/b/a Brent's Cajun Seafood & Oyster Bar as general manager. [Doc 18, ¶ 1; Doc. 19, ¶ 4].

2. Prior to June 2018, Hickman deposited his salary into an account ending in 6176 at Prosperity Bank under his name. [Doc. 18, ¶ 2, Ex. C; Doc. 19, ¶ 2].

3. In June 2018, Berta Hickman (Debtor's wife) opened an account in her name only ending in 8938 at Prosperity Bank. [Doc. 18, ¶ 3; Doc. 19, ¶ 3].

4. From June 2018 through September 2018, Hickman deposited his salary into his wife's bank account. [Doc. 18, ¶ 4, Ex. D; Doc. 19, ¶ 4].

3

5. Prior to July 2018, Hickman was a 50% owner in HLMR, LLC. [Doc. 18, ¶ 5; Doc. 19, ¶ 5].

6. On July 2, 2018, Plaintiff, R&D "2" Investment Group, LLC, obtained a judgment in the amount of $46,179.39, plus interest, against Hickman in the District Court of Oklahoma County in Case No. CJ-2017-5064. [Doc. 18, ¶ 6, Ex. G; Doc. 19, ¶ 6].

7. On August 3, 2018, Plaintiff, The Shack, LLC, obtained a judgment against Hickman in the amount of $40,066.69, plus interest, in the District Court for Oklahoma County, Case No. CJ-2017-5065. [Doc. 18, ¶ 7, Ex. H; Doc. 19, ¶ 7].

8. Hickman knew about both of the state district court cases and the judgments entered against him. [Doc. 18, ¶ 8, Ex. E; Doc. 19, ¶ 8].

9. In mid to late July 2018, Hickman sold his interest in HLMR, LLC to Floyd Landry for $25,000. Hickman testified that the reason for the sale was that he needed the money to pay back taxes. [Doc. 18, ¶¶ 9 & 10, Ex. B & F; Doc. 19, ¶¶ 9 & 10].

10. On July 20, 2018, Hickman deposited the $25,000 from the sale of his interest in HLMR, LLC into his wife's bank account. [Doc. 18, ¶ 11, Ex. D & E; Doc. 19, ¶ 11].[5]

11. Around August 9, 2018, Hickman paid attorney O. Clifton Gooding for bankruptcy services using funds from his wife's bank account. [Doc. 18, ¶ 12, Ex. D; Doc. 19, ¶ 12].

12. On August 31, 2018, Hickman filed for Chapter 7 Bankruptcy. [Case No. 18-1306, Doc. 1].

13. Hickman filed his Bankruptcy Petition, Schedules and Statement of Financial

---

[5] Hickman does claim, however, that he put the funds in his wife's bank account on advice of counsel. [Doc. 19, ¶ 11; Doc. 18, Ex. F – *Plaintiffs Request for Admission No. 7*].

Affairs under penalty of perjury. [Doc. 18, ¶ 15, Ex. A; Doc. 19, ¶ 15].

14. In his Schedules Hickman stated under oath that he was the sole proprietor of HLMR, LLC. Hickman listed the value of his interest in HLMR, LLC as "unknown." [Doc. 18, ¶¶ 16 & 22; Doc. 19, ¶¶ 16 & 22].[6]

15. In discovery Hickman denied he was the sole proprietor. At the § 341 First Meeting of Creditors, Hickman testified that he owned 49% of HLMR, LLC. [Doc. 18, ¶¶ 17 & 31, Ex. E & F; Doc. 19, ¶¶ 17 & 31].

16. Hickman's Statement of Financial Affairs filed August 31, 2018, reflected that he did not sell, trade, or otherwise transfer property to anyone other than in the ordinary course of business within two years preceding the filing of bankruptcy. [Case No. 18-13706, Doc. 1, pg. 53, ¶ 18]. In fact, in July 2018, Hickman had sold his interest in HLMR, LLC to Floyd Landry for $25,000. [See Undisputed Fact ¶ 9]. Additionally, he failed to disclose in his Schedules or Statement of Financial Affairs that he had put the $25,000 in his wife's bank account. [Doc. 18, ¶ 25; Doc. 19, ¶ 25]. At the § 341 First Meeting of Creditors, Hickman admitted that at the time he signed his Petition, Schedules, and Statement of Financial Affairs he knew that he had placed the $25,000 into his wife's account. [Doc. 18, Ex. F, pg. 90, *Response to Request for Admission No. 11*; Doc. 19, ¶ 25, Ex.1, pg. 7-8].

17. At his § 341 First Meeting of Creditors, Hickman testified under oath that his Petition, Schedules and Statement of Financial Affairs were correct with no errors or omissions. [Doc. 18, ¶ 30, Ex. E, pg. 81; Doc. 19, Ex.1, pg. 2].

---

[6] Hickman takes issue with the word "testify" used in the Plaintiffs' Motion with regard to the information provided in the Debtor's Petition, but acknowledges that the "Petition speaks for itself."

18. Hickman testified at his § 341 First Meeting of Creditors that he owned the $25,000 which was still in his wife's bank account. He further testified that the money was to pay his debt to the Internal Revenue Service. [Doc. 18, ¶¶ 32, 33 & 34, Ex. E, pg. 7 & 12; Doc. 19, ¶¶ 32, 33 & 34].

19. Subsequent discovery by the Trustee revealed that a portion of the $25,000 had been spent on a trip to Cabo San Lucas, Mexico, dining out and miscellaneous other personal expenses, with none paid to the Internal Revenue Service. [Doc. 18, ¶¶ 35 & 36, Ex. D; Doc. 19, ¶¶ 35 & 36].

20. Following the § 341 First Meeting of Creditors, at the direction of the Trustee, Hickman turned over to the Trustee $18,000 remaining from the $25,000 sale of his interest in HMLR, LLC. [Doc. 18, ¶ 37, Ex. D; Doc. 19, ¶ 37].

21. In his Statement of Financial Affairs, Hickman stated that he had only $33.09 in his bank account ending in 6176 at Prosperity Bank and that he had no other bank accounts. [Case No. 18-13706, Doc. 1, pg. 11, ¶ 17].

22. Hickman did not disclose that he had been putting his salary into his wife's bank account. Bank records reflect that from June through September, 2018, Hickman deposited his bi-monthly paychecks of approximately $2,200 each into his wife's account. Just prior to the § 341 First Meeting of Creditors, Hickman started putting his salary into a bank account in his own name. [Doc. 18, ¶¶ 26 & 38, Ex. D & E; Doc. 19, ¶¶ 26 & 38].

## IV. Summary Judgment Standards in General

It is appropriate to grant a motion for summary judgment when the pleadings and other materials in the record, together with supporting affidavits, if any, demonstrate that there is no genuine dispute with respect to any material fact and that the moving party is

entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c), made applicable to this adversary proceeding by Rule 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Courts must review the evidentiary material submitted in support of the motion for summary judgment to ensure that the motion is supported by evidence. If the evidence submitted in support of the summary judgment motion does not meet the movant's burden, then summary judgment must be denied. Hearsay evidence cannot be considered on a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994). When considering a motion for summary judgment, the court views the record in the light most favorable to the party opposing summary judgment. See *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir. 1991) (the court "must view the record in a light most favorable to the parties opposing the motion for summary judgment."); *Harris v. Beneficial Oklahoma, Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997).

Denial of summary judgment requires existence of genuine material issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986). No genuine issue of fact exists if a rational fact finder, when viewing the record as a whole, could not find for the party opposing the summary judgment. See *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no 'genuine issue for trial.'"). "[T]he nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

### V. Summary Judgment Where Showing Fraudulent Intent Required

A debtor's discharge is rarely denied by summary judgment. Most grounds for denial of a discharge require a finding that a debtor intended to mislead, conceal, or deceive. "As a general rule, questions involving a person's intent or other state of mind cannot be resolved by summary judgment." *In re Herrman,* 355 B.R. 287, 291 (Bankr. D. Kan. 2006) (citing *Prochaska v. Marcoux*, 632 F.2d 848, 851(10th Cir. 1980), *cert. denied* 451 U.S. 984, 101 S.Ct. 2316 (1981)); *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Questions of intent involve many intangible factors, such as witness credibility, that are best left to the consideration of a fact finder after a full trial."). "But in an exceptional case, a person's 'denial of knowledge may be so utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it,' making a trial on the question of the person's state of mind unnecessary." *Herrman,* 355 B.R. at 291. Thus, while the issue of intent involving a person's state of mind is generally a question of fact that may preclude summary judgment, there is no *per se* rule that summary judgment is improper under § 727(a) where intent is an issue. Likewise, it is not *per se* inappropriate to grant summary judgment when intent is an element of proof for non-dischargeability determination under § 727(a).

8

## VI. Discussion

Because of the "fresh start" policy underlying the Bankruptcy Code and the harshness of the penalty of denial of a debtor's discharge, the Court construes the discharge provisions under the Bankruptcy Code liberally in favor of the debtor and strictly against the party objecting to discharge. See *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997) (acknowledging generally "that the Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor."); *Rosen v. Bezner*, 996 F.2d 1527, 1534 (3rd Cir. 1993) (noting that "§ 727 is to be construed liberally in favor of the debtor and that a total bar to discharge is an extreme penalty"); *Freelife International, LLC v. Butler (In re Butler)*, 377 B.R. 895, 915 (Bankr. D. Utah 2006) ("exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor").

Notwithstanding the presumption in favor of a "fresh start," a debtor who seeks the protection afforded under the Bankruptcy Code has a duty to fully disclose the nature of his assets and financial affairs when completing his statements and schedules. *Butler*, 377 B.R. at 914-15 ("In exchange for that 'fresh start,' the Code requires debtors to accurately and truthfully present themselves before the court."); *The Cadle Co. v. King (In re King)*, 272 B.R. 281, 300 (Bankr. N.D. Okla. 2002) ("The bankruptcy schedules and statement of affairs do not ask the debtor to make an assessment of what he thinks are important assets or debts. Debtors must, under oath, list all creditors and assets, as well as all transfers of property within the prior year.").

A debtor's discharge may be denied if the debtor knowingly and fraudulently, in or

in connection with the case, makes a false oath. 11 U.S.C. § 727(a)(4)(A).  A "false oath" may be either: "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." *In re Garland*, 417 B.R. 805, 814 (10th Cir. BAP 2009).

To prevail on a claim for denial of discharge under § 727(a)(4)(A), the plaintiff must establish the following elements by a preponderance of the evidence: (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false; (4) that the debtor made the statement with intent to defraud; and (5) that the statement related materially to the debtor's bankruptcy case. *In re Splawn*, 376 B.R. 747, 759-60 (Bankr. D. N.M. 2007); *In re Eigsti*, 323 B.R. 778, 783-84 (Bankr. M.D. Fla. 2005).  The subject matter of a false oath is material and warrants a denial of discharge if it is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence of a disposition of the debtor's property.  See e.g., *In re Calder*, 907 F.2d 953, 955 (10th Cir. 1990).

The burden of proof rests with the party opposing discharge, but "once it reasonably appears that the oath is false, the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).

Congress set the bar for denial of a discharge under § 727(a) claim very high by specifying that the debtor must have made a false oath or account "knowingly and fraudulently."  It is not enough for the trustee or objecting creditor to point to inaccuracies and inconsistencies in the debtor's schedules, as troubling as those might be. *In re*

10

*Phouminh,* 339 B.R. 231, 242 (Bankr. D. Colo. 2005). The Debtor will not be denied a discharge if a false statement is due to mere mistake or inadvertence. *Brown,* 108 F.3d at 1294; *In re Butler*, 38 B.R. 884, 889 (Bankr. D. Kan. 1984). Moreover, an honest error or mere inaccuracy is not a proper basis for denial of discharge. *Brown,* at 1295; *In re Magnuson*, 113 B.R. 555, 559 (Bankr. D. N.D. 1989). "However, 'reckless indifference to the truth ... has consistently been treated as the functional equivalent of fraud for purposes of § 727(a)(4)(A).' Reckless disregard means, 'not caring whether some representation is true or false.'" *In re Webb*, 2019 WL 2895000, at *6-7 (Bankr. N.D. Okla. 2019) (citing *In re Chaven*, 150 F.3d 726, 728 (7th Cir. 1998)); *In re Croft*, 500 B.R. 823, 858 (Bankr. W.D. Tex. 2013). The "mistake" or "I didn't think it was important" defenses have their limits. "A debtor has an uncompromising duty to disclose whatever ownership interests are held in property," and "it is not for the debtor to pick and choose or obfuscate the answers." *Fokkena v. Tripp, (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998); *In re Yonikus*, 974 F.2d 901, 904 (7th Cir. 1992) ("Debtors have an absolute duty to report whatever interest they hold in property, even if they believe the assets are worthless or are unavailable to the bankruptcy estate.").

Moreover, that duty of disclosure continues beyond the initial filings in the case so that "[f]ailure to amend schedules after becoming aware of their inaccuracies is additional indicia of a debtor's reckless indifference to the truth." *Grassmann v. Brown (In re Brown)*, 570 B.R. 98, 116 (Bankr. W.D. Okla. 2017). It is not necessary to show that the debtor acted deliberately to deceive the trustee and the creditors; rather, the requisite fraudulent intent can be shown by establishing that the debtor acted with reckless disregard for the

truth. A "statement" includes not just positive assertions, but also omissions. *In re Wagner*, 527 B.R. 416, 430 (10th Cir. BAP 2015). The cumulative effect of a large number of falsehoods in the debtor's schedules is evidence of reckless disregard for the truth, and is sufficient to circumstantially prove fraudulent intent under § 727(a)(4)(A). *In re Crumley*, 428 B.R. 349, 366-67 (Bankr. N.D. Tex. 2010). In the present case, Debtor neither controverted Plaintiffs' statement of undisputed facts in their Motion, nor presented any additional statement of facts supported with references to an affidavit or other portions of the record refuting those undisputed facts.

In cases involving a § 727 objection to discharge, debtors, while perhaps not controverting the moving party's statement of facts, often argue that fraudulent intent cannot be inferred from those facts, and that summary judgment on a false oath claim is inappropriate. See e.g., *In re Weddington,* 457 B.R. 102, 110 (Bankr. D. Kan. 2011). That's essentially the position that the Debtor takes here – he does not take issue with the Plaintiffs' claims that he had made false statements in his Schedules and Statement of Financial Affairs, but he does deny that the same were made with any fraudulent intent. Debtor attempts to ameliorate the inaccuracies in his bankruptcy filings by pointing out that he corrected such inaccuracies by his testimony at the § 341 First Meeting of Creditors and subsequent discovery. Debtor further argues he did not conceal such inaccuracies but *voluntarily* brought them to the Trustee's attention. This, Debtor argues, is not indicative of fraudulent intent. Lastly, Debtor argues that his failure to amend his Schedules and Statement of Financial Affairs should not be held against him where those Schedules and Statement of Financial Affairs were effectively "amended" by his testimony at the § 341

First Meeting of Creditors.

Having acted as a Chapter 7 Trustee for more than 20 years, the Court considers it imperative on the part of counsel, or at least "best practice," for a debtor to formally amend any Schedule or Statement of Financial Affairs which had initially omitted assets and liabilities or otherwise provided incorrect information. While that was not done here, the transcript of the § 341 First Meetings of Creditors does not reflect that the Trustee formally requested such amendment. In any event, given the other factual circumstances of the case supporting the Court's decision, the Court is not considering the Debtor's failure to make amendments as bearing on the issue of dischargeability.[7]

As to the Debtor's claim that fraudulent intent cannot be inferred because he "voluntarily" disclosed the errors and omissions in his Schedules and Statement of Financial Affairs to the Trustee at the § 341 First Meeting of Creditors, the Court disagrees. A review of the transcript of the § 341 First Meeting of Creditors reveals that the Trustee, as is the custom, opened his examination by asking the Debtor if he had reviewed information contained in the Petition, Schedules and Statement of Financial Affairs and determined them to be accurate and complete. The Debtor answered "Yes, sir." The Trustee asked whether the Debtor had disclosed all his assets and all his liabilities. Again, he answered "Yes, sir." Asked whether there were any errors or omissions in the filings that he wished to bring to the Trustee's attention, the Debtor answered "Not that I'm aware

---

[7] As a general rule, a subsequent disclosure would not absolve the debtor from the original false statements made under penalty of perjury. This defense has been generally rejected by the courts. See e.g., *In re Whitehead*, 278 B.R. 589, 595 (Bankr. M.D. Fla. 2002); *In re Arcuri*, 116 B.R. 873 (Bankr. S.D. N.Y. 1990); *In re Kestell*, 99 F.3d 146 (4th Cir.1996); Compare, *In re Brown,* 108 F.3d 1290, 1295 (10th Cir. 1997) (denial of discharge not warranted when debtor himself raised omission of automobile at creditors meeting).

13

of." Given the opportunity to "voluntarily" correct any errors or omissions the Debtor failed to avail himself of that opportunity. It was only when the Trustee or creditors' counsel made specific inquiry as to such matters as the sale of his limited liability company membership and location of the proceeds of that sale did the Debtor disclose the $25,000 which he had received pre-petition and which was deposited into his wife's bank account. Only after the Trustee directed the Debtor to turn over to him the $25,000 did the Debtor do so. From the Court's perspective, there is no "voluntariness" mitigating the Debtor's conduct – only the Debtor being truthful when "he got caught with his hands in the cookie jar."

Four of the five elements required to establish an objection to discharge under § 727(a)(4)(A) are indisputably present here: (1) that the debtor made a statement under oath, (2) that the statement was false, (3) that the debtor knew the statement was false, and (4) the statement related materially to the debtor's bankruptcy case. See *Splawn*, 376 B.R. at 759-60. The only remaining issue is whether Hickman made the statements with the intent to defraud, mislead, conceal or deceive.

As discussed above, it is generally difficult to determine the requisite fraudulent intent by summary judgment rather than a trial, and the Court does not deviate from this general principle lightly. This is one of those cases, however, that the debtor's conduct is so egregious that a claim that he acted without fraudulent intent is "so utterly implausible in light of the conceded or irrefutable evidence that no rational person could believe it." *Herrman,* 355 B.R. at 291. Less than two weeks before Hickman retained bankruptcy counsel, he received $25,000 from the sale of his interest in HLMR, LLC and deposited it into his wife's bank account (an account which had only been opened a month or so

14

earlier) without disclosing the sale or the deposit of the proceeds to bankruptcy counsel or including the funds on his Schedules and Statement of Financial Affairs. Similarly, in June 2018, he began depositing his paychecks into his wife's newly created bank account and continued to do so until after he filed bankruptcy without disclosing the same in his Statement of Financial Affairs. Further, a portion of the sale proceeds, supposedly earmarked for payment of IRS debt, was used to pay for a trip to Cabo San Lucas, Mexico and other miscellaneous personal expenses. The Court finds that no rational trier of fact could find that Hickman's concealment and misrepresentation of material facts in his bankruptcy filings was anything other than a knowing attempt to perpetrate a fraud on the Bankruptcy Court and the Trustee.

The Court recognizes the reality that judgment debtors often conceal their assets from creditors' collection efforts, including execution and garnishment. The Court does not know that depositing the $25,000 sale proceeds and his paychecks in his wife's bank account was the motivation behind Hickman's conduct. Hickman testified that he put the $25,000 in his wife's name upon the advice of his state court defense counsel. But that concealment from creditor activity was no longer valid when Hickman received the benefit of the protection of the automatic stay when he filed bankruptcy. Nevertheless, he continued to conceal his assets and business affairs from the bankruptcy court. Hickman's concealment of the true nature of his financial affairs to this degree was a major breach of a debtor's obligation to honestly, accurately and truthfully represent his financial affairs to the Trustee and to the court.

In opposing summary judgment, Hickman primarily relies upon the case of *In re Brown,* 108 F.3d 1290 (10th Cir. 1997). The case is clearly distinguishable from the

circumstances here. There the 10th Circuit reversed the bankruptcy court's denial of the debtor's discharge where his Schedules and Statement of Financial Affairs failed to disclose his grant of a security interest in his antique car collection shortly before filing bankruptcy. The Court held that the granting of security interest in the debtor's only unencumbered assets in order to obtain much needed capital for his business, which were his sole source of income, did not evince fraud under § 727(a)(2)(A), not the Bankruptcy Code section in which this case is based. The court further found that the debtor's failure to list an automobile in the bankruptcy schedules did not justify a denial of his discharge where "it is undisputed that *the debtor raised the omission* of the automobile at the § 341 creditors meeting ... and that no inference of fraudulent intent can be drawn from an omission *when the debtor promptly brings it to the court or the trustee's attention absent other evidence of fraud*." (Emphasis added). *Id.,* at 1294.

In the present case, at his § 341 First Meeting of Creditors Hickman reaffirmed the accuracy and truthfulness of his patently inaccurate Schedules and Statement of Financial Affairs. It was only upon the Trustee's and creditor's interrogation as to specific matters did the truth come forward. Additionally, unlike *Brown*, there was not a single isolated omission from Hickman's Schedules and Statement of Financial Affairs. There was concealment of the sale of his membership in the limited liability company, the concealment of the $25,000 sale proceeds, and the concealment of the use of his wife's bank account into which the $25,000 and his paychecks had been deposited. Lastly, in *Brown* the court found the Bankruptcy Court erred in finding that the debtor's failure to amend his bankruptcy schedules to correct the error was a basis for denial of his

discharge. *Id.* Here, this Court is not considering Hickman's failure to amend his schedules as a basis to deny his discharge.

### VII. Conclusion

The material and cumulative nature of the Debtor's misstatements and omissions as found by the Court are more than sufficient to establish a pattern of falsity so as to bar Hickman's discharge under § 727(a)(4)(A). Upon consideration of all the facts and circumstances, the Court concludes that based upon the undisputed material facts as a matter of law the Debtor's false oaths were made fraudulently or with such a reckless indifference to the truth as to warrant denial of his discharge. The Court finds that Plaintiffs have met their burden of showing that there was no material issue of disputed fact. Accordingly, based upon Rule 7056 and the findings of fact and conclusions of law as stated above,

**IT IS ORDERED** that the *Plaintiffs' Motion for Summary Judgment* [Doc. 18] is hereby **Granted**. Pursuant to Fed.R.Bankr.P. 7058(a) a separate judgment will be entered contemporaneously with this *Opinion and Order Granting Plaintiffs' Motion For Summary Judgment*.

**# # #**